OPINION OF THE COURT
Ariel E. Belen, J.
In the interest of aiding in balancing the unwieldy New York State budget, Governor George Pataki and the Commissioner of the New York State Office of Mental Health have proposed the closure or a drastic reduction of services at Kingsboro Psychiatric Center in Brooklyn, New York.
Plaintiffs and those who have intervened on their behalf represent the staff and patient population of Kingsboro and some consumer and advocacy groups. They seek to enjoin the defendants from implementing a significant service reduction by a significant reduction in staffing or services and enjoining the defendants from taking any further action to close the facility upon the grounds that defendants failed to comply with Mental Hygiene Law § 7.17 (e) before seeking closure or reduction.
Kingsboro Psychiatric Center is a comprehensive, community-based mental health facility operated by the Office of Mental Health (hereinafter OMH). Kingsboro is located in Kings County and accounts for the highest percentage of adult admissions (23%) to State psychiatric centers and the highest percentage of all resident patients (16%) in the State’s psychiatric centers. Kingsboro consists of a 90-bed acute care admissions program for adults, a 433-bed chronic psychiatric program for adults, an 18-bed in-patient child / adolescent psychiatric program, a 24-bed crisis residence program, a family care program and out-patient programs and services. Kingsboro’s out-patient service operates clinics in Williamsburg, Bushwick and Canarsie, as well as psychiatric teams in Seaport and Brooklyn Manor Adult Homes. This out-patient service admits 900 to 1,000 patients a year, which represents 45,000 visits annually. It is estimated that 75% of the State employees working at Kingsboro reside in Brooklyn. (Report of Assembly Standing Committee on Mental Health, Mental Retardation, and Developmental Disabilities, The Proposed Closure of Kingsboro Psychiatric Center, the Governor’s Proposal, Background and Recommendation Against Closure, Feb. 20, 1996.)
*898 If Kingsboro is not closed, it is currently anticipated that by March 31, 1997, patients would be housed in buildings 1, 2 and 3, which together would have a capacity of 365 beds. This census of 365 would represent a net decline of 89 patients from the facility’s current census of 454. The Agency Work Force Management Plan anticipates a reduction of 296.80 positions at Kingsboro and represents the agency’s plan, as of April 28, 1996. This reduction in force would lay off or forcibly transfer approximately 30% of the total workforce of the center. (See, OMH Agency Work Force Management Plan, affidavit of Patricia Baker, May 18, 1996.)
Mental Hygiene Law § 7.17 (e) delineates the steps that must be taken by the Commissioner of Mental Health in anticipation of significant service reductions at certain enumerated State psychiatric facilities, including Kingsboro. It is conceded by the defendants that the Commissioner did not comply with the procedure set forth in Mental Hygiene Law § 7.17 (e) (3), by failing to give the requisite 12 months’ notice of proposed service reductions to local community and labor organizations. Defendants nevertheless contend that despite the undisputed violation of the notice requirement of Mental Hygiene Law § 7.17 (e) (3), an injunction cannot be granted because under the clear language of Mental Hygiene Law § 7.17 (e), "nothing in this subdivision shall create a basis for enjoining any otherwise lawful service reductions”.
Mental Hygiene Law § 7.17 (e) (1), (2), (3) and (4) read in pertinent part, as follows:
"(e) In the event that the plan for state and local mental health services, developed in accordance with subdivision (b) of this section, determines that significant service reductions are anticipated for a particular state-operated hospital or its catchment area, or a state-operated research institute, the commissioner shall take the following actions, provided nothing in this subdivision shall create a basis for enjoining any otherwise lawful service reductions:
"1. confer with the department of civil service, the governor’s office of employee relations and any other state agency to develop strategies which attempt to minimize the impact on the state workforce by providing assistance in obtaining state employment in state-operated community-based services or other employment opportunities, and to develop strategies for the development of necessary retraining and redeployment programs. In planning such strategies, the commissioner shall provide for the participation of the representatives of the em *899 ployee labor organizations and for the participation of managerial and confidential employees to ensure continuity of employment;
”2. consult with the department of economic development and any other appropriate state agencies to develop strategies which attempt to minimize the impact of such significant service reductions on the local and regional economies;
”3. provide for a mechanism which may reasonably be expected to provide notice to local governments, community organizations, employee labor organizations, managerial and confidential employees, consumer and advocacy groups of the potential for significant service reductions at such state-operated hospitals and state-operated research institutes at least twelve months prior to commencing such service reduction, provided, however, that this requirement shall be deemed satisfied with respect to reductions at Central Islip Psychiatric Center, Gowanda Psychiatric Center, Harlem Valley Psychiatric Center, Kings Park Psychiatric Center, Willard Psychiatric Center and Manhattan Children’s Psychiatric Center; and
"4. consult with the office of general services and any other appropriate state agency in developing a mechanism for determining alternative uses for land and buildings to be vacated by the office of mental health. Such a mechanism should include a review of other programs or state agencies that could feasibly expand their operations onto a state-operated hospital campus and are compatible with health, safety and programmatic needs of patients served in such facilities.” (Emphasis supplied.)
Defendants posit that the above-quoted language of Mental Hygiene Law § 7.17 (e) including the 12 months’ notice provision of Mental Hygiene Law § 7.17 (e) (3) does not provide a basis to enjoin the Commissioner from implementing major service reductions at Kingsboro or any of the other legislatively protected State institutions enumerated in Mental Hygiene Law § 7.17 (b). Plaintiffs disagree with this interpretation. Plaintiffs contend that the Mental Hygiene Law requires the Commissioner to notify and consult with the State workers employed in these facilities, local governments, community organizations and consumer and advocacy groups 12 months before commencing significant service reductions. Plaintiffs contend that this legislation would be meaningless and unenforceable if defendants’ interpretation of the injunction clause was correct. According to plaintiffs, the legislative history indicates that this was not the intent of the Legislature in enacting this statute.
*900 This court finds that the language in Mental Hygiene Law § 7.17 (e), stating, "provided nothing in this subdivision shall create a basis for enjoining any otherwise lawful service reductions”, does not preclude the granting of an injunction to prevent the "significant service reductions” that trigger the 12 months’ notice provisions. Without straining the interpretation of the statute, it can be coherently read to mean that an injunction cannot be granted where the Commissioner reduces services to an extent that does not reach the level of "significant service reductions.” If the Legislature had intended to preclude granting an injunction even in the face of "significant service reductions,” it could easily have made that clear by using the language significant service reductions instead of "otherwise lawful reductions” in subdivision (e).
The omission of the word "significant” from the injunction clause is in itself a significant exclusion. The word cannot be inserted into the statute by this court, since "[a] court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit; and the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended” (McKinney’s Cons Laws of NY, Book 1, Statutes § 74). Since there can be no question that the reductions in this case rise to the level of "significant,” the statutory language barring the grant of injunctive relief is clearly not applicable.
A brief review of the legislative history supports this interpretation of the plain language of the statute. Pursuant to the affidavit of Francine G. Turner, sworn to March 16, 1993, the legislative intent in enacting Mental Hygiene Law § 7.17 (e) "was not to limit injunctive relief for those items listed in paragraph (e) * * * It was specifically anticipated that violation of those provisions could result in an application for injunctive relief.” Although disputed by the defendants in their memorandum of law of April 22, 1996 basic rules of statutory construction support the plaintiffs’ view.
McKinney’s Consolidated Laws of NY, Book 1, Statutes § 96 states: "A basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment” and section 97 states: "A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent.” Without the ability to obtain injunctive relief, the portions of Mental Hygiene Law § 7.17 (e) requiring the Commissioner to *901 provide notice, would amount to at best suggestions rather than legal imperatives. Construing the language of Mental Hygiene Law § 7.17 in its "natural and most obvious” sense (McKinney’s Cons Laws of NY, Book 1, Statutes § 94) leads us to read the statute so as not to preclude injunctive relief herein.
Parenthetically, if this court were to determine that no injunction should be granted, this would leave the State open to a multiplicity of lawsuits from workers who were wrongfully terminated as a result of OMH’s failure to give proper notice.
When this exact issue was litigated in Supreme Court, Albany County, in 1992, in Town of Dover v Surles (Apr. 13, 1993, Connor, J., index No. 93-1253), the court granted a preliminary injunction against the Office of Mental Health when OMH attempted to close the Hudson Valley Psychiatric Center without providing the 12 months’ notice as required by statute. The court specifically rejected the same arguments raised by the defendants herein, that the requirements of Mental Hygiene Law § 7.17 (e) were not enforceable by injunctive relief. The court in Town of Dover (supra) held: "The statute can, however, be the basis to enjoin service reductions that are not being accomplished in accord with the requirements of § 7.17 (e) itself. Otherwise the requirements of § 7.17 (e) (1) (2) (3) and (4) of the Mental Hygiene Law would be mere declarations without any 'teeth’ or remedy. (A tiger sans incisors!) * * * Undisputed is the fact that the twelve month notice contemplated by § 7.17 (e) (3) has not been given to petitioners. Absent such notice petitioners are denied their rights as provided by the statute.”
Justice John G.. Connor further found that the injunctive criteria of potential irreparable injury was met by plaintiffs, stating:
"Respondents maintain that the harm, if any, to employees and regional community is not irreparable, but compensable. Such argument fails to recognize the damage inflicted to the community. The impact is immeasurable in dollars and cents and the absence of such notice constitutes irreparable harm. Time lost to minimize the impact is irreplaceable. The interruption of salary payments to laid off or discharged employees of Harlem Valley will undoubtedly affect the local economy of the Town of Dover and cause families to fail even temporarily to meet payment obligations. (See generally, Association of Surrogates v. New York 940 F. 2d 766 (2 CA 1991).
"The legislature in its wisdom provided twelve months notice 'to minimize’ * * * 'to assist in the development of neces *902 sary retraining and re-employment’ and 'to ensure the continuity of employment.’ This is precisely the purpose of the legislation.”
In the decision in Shea v New York State Off. of Mental Health (Sup Ct, Erie County, May 30, 1996), Honorable Robert E. Whelan found that an injunction was an appropriate remedy to prevent "significant service reductions from being imposed without compliance with the requirements of Mental Hygiene Law § 7.17 (e)” at the Buffalo Psychiatric Center. Justice Whelan did not reach the issue of whether the language in the statute precluding the granting of injunctive relief was applicable since that issue was not raised before him in a timely manner. He did find, however, that the service reductions anticipated at the Buffalo Psychiatric Center would cause irreparable harm unless the measures required by the statute to mitigate such harm were taken by OMH.
This court concurs with the conclusions reached by Justices Connor and Whelan in the Harlem Valley and Buffalo Psychiatric Center cases. The plaintiffs here in the Kingsboro case are entitled to an injunction to compel the Commissioner to comply with the statutory notice and consultation requirements prior to instituting significant service reductions at Kingsboro. Plaintiffs have demonstrated the potential for irreparable harm if such reductions occur according to the schedule defendants intend to implement. Two hundred and ninety-six workers, approximately one third of the employees of Kingsboro, will be laid off, transferred or given early retirement according to this schedule.
Many of the services provided by Kingsboro will be discontinued without the State having successfully demonstrated how such dispossessed workers and patients will be cared for in the future. Plaintiffs have shown that this will cause a rippling effect beyond the direct impact to the laid off workers and their families to the economic detriment of the Flatbush neighborhood where the facility is located and the entire Borough of Brooklyn. The State has not included for this court’s review any specific plan stating what reductions are definitely intended and it appears that there is no definite plan, nor has the State demonstrated specifically how other institutions will pick up the slack for the workers and patients. The State seems to rely on the fact that other States are moving in a direction of decentralizing such services as Kingsboro.provides, but the State fails to demonstrate why this would be beneficial here.
The parties have concurred that this court can also reach the question of whether a permanent injunction may be issued *903 on the grounds that the closure or reduction of services at Kingsboro Psychiatric Center would violate the Civil Rights Act of 1964 (as amended by 42 USC § 2000a et seq.) based on the papers submitted herein. Plaintiffs contend that since most of the employees and patients at Kingsboro are black and Hispanic, the closure of Kingsboro would have an adverse impact on those minority group members in contravention of Federal and State law. Plaintiffs additionally contend that the proposed reductions or closure violate the Americans with Disabilities Act (42 USC § 12101 et seq.), the Rehabilitation Act of 1973 (29 USC § 796 et seq.), the New York State Human Rights Law (Executive Law § 296 et seq.), and also violate the Equal Protection Clause of the United States Constitution, redress-able under 42 USC § 1983.
The defendants contend that the proposed closure or shrinkage of Kingsboro does not violate any of these statutes and must be seen in the context of proposed State-wide closures, which impact as much or more on nonprotected whites. They further contend that the laws protecting persons with disabilities (here patients with psychiatric disabilities) are inapplicable since it is psychiatric hospitals that are targeted, and thus it makes no sense to allege that Kingsboro patients are being treated differently than nondisabled persons, "for it is plaintiffs’ mental disability that creates the need for the services which they claim are at risk by virtue of Kingsboro’s closure” (defendant’s mem of law in support of cross motion to dismiss plaintiff-intervenors’ complaint, at 9, para 2).
Plaintiffs allege that the proposed closure of Kingsboro is predicated upon a mistaken belief on the part of Governor Pataki that the facility is unable to control the violent propensities of its patients. According to plaintiffs, the mischaracterization of the patient population of Kingsboro in some statements made by the Governor suggests that the targeting for closure of this facility emanates from the Governor’s allegedly stereotypical generalizations in response to two isolated incidents of violence at Kingsboro, and thus constitute illegal discrimination against the mentally ill.
In the case of Bryan v Koch (627 F2d 612 [2d Cir 1980]) the Second Circuit upheld the findings of Southern District Judge Sofaer which permitted Mayor Koch to close Sydenham Hospital in Harlem. Although the closure of that hospital impacted almost solely on minority group members, Judge Sofaer found that fact alone does not make it violative of the Civil Rights Act, finding that "even if a Title VI [civil rights] *904 violation could be established by the 'effects’ test — evidence of a disproportionate racial impact or effect unjustified by any legitimate governmental purpose * * * — the evidence adequately established the City’s justification for closing Sydenham [citations omitted]” (627 F2d 612, 615). To reach that conclusion extensive evidence was presented at hearings. Among the criteria evaluated by the court was a comparison of each of the municipal hospitals with regard to (a) hospital size, scope of patient services, and extent of usage; (b) patient access to comparable alternative facilities; (c) quality of plant and operations; and (d) present and predicted fiscal performance.
Although the parties to this case have agreed that this court can make a determination on the evidence submitted, it has become apparent that it is not possible to do so. The defendants contend that the closure of Kingsboro must be viewed in the context of a State-wide reduction in such services, but without more information as to how the Kingsboro facility compares with other institutions slated to remain open, this court cannot evaluate whether or not the closure of Kingsboro can be enjoined due to discriminatory effect or intent. Furthermore, it now appears that Kingsboro will not be closed under the current budget plan but instead drastically reduced in staffing and population. We have not been advised whether any of the other State mental hospitals are now scheduled for closure or major reduction and therefore cannot presume to make a comparison between them and Kingsboro.
While a permanent injunction cannot be granted here at this stage of the proceedings, we find that plaintiffs have met the requirements of CPLR 6301 and 6311 for a preliminary injunction and temporary restraining order. They have demonstrated a likelihood of success on the merits, irreparable harm absent the granting of injunctive relief and a balancing of the equities favoring the plaintiffs. (See, e.g., Sachellaridou v Pasent Realty Co., 104 AD2d 764 [1st Dept 1984]; Albini v Solork Assocs., 37 AD2d 835 [2d Dept 1971].)
Every court who has reached this issue has come to the same conclusion. In Suffolk County, in the case of Quigley v New York State Off. of Mental Health (July 17, 1996, index No. 16045/96), decided today, Justice Lester E. Gerard granted injunctive relief preventing layoffs at Pilgrim Psychiatric Center, stating: "Further, it is the opinion of this Court that the statute 7.17 (e) cannot be interpreted as denying the union the right to injunctive relief.”
In the only appellate decision in this matter on June 24, 1996, Honorable John J. Callahan, Associate Justice of the Ap *905 pellate Division, Fourth Judicial Department, vacated the statutory stay, if any, that exists pending an appellate hearing of a motion to vacate a stay, leaving intact the decision of Justice Whelan in Erie County to grant the injunction in the Buffalo Psychiatric Center case.
Consequently, defendants are directed to comply with the requirements of Mental Hygiene Law § 7.17 and are enjoined from implementing significant service reductions at Kingsboro Psychiatric Center until 12 months from such time that proper notification of the plan of the Office of Mental Health for closure or reduction of Kingsboro Psychiatric Center is made to all persons and groups delineated in Mental Hygiene Law § 7.17. Defendants’ cross motion to dismiss the complaint is denied with prejudice. Defendants’ cross motion to dismiss the consumer intervenor’s complaint is denied with prejudice. Plaintiffs’ request for a permanent injunction is denied without prejudice to renew.